UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LABARRON MCCLENDON | * | CIVIL ACTION NO. 23-4216 |
| | * | |
| | * | SECTION: "T"(1) |
| VERSUS | * | |
| | * | JUDGE GREG G. GUIDRY |
| NEW ORLEANS SEWERAGE & | * | |
| WATER BOARD, ET AL. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

<u>ORDER AND REASONS</u>

This case arises out of the alleged wrongful termination of plaintiff's employment. Each of the two defendants have filed a Motion to Dismiss that is now before the Court. (Rec. Docs. 11, 12).[1] The Motions to Dismiss are hereby GRANTED in part and DENIED in part. Plaintiff cannot state a Whistleblower retaliation claim, a breach of contract claim, a detrimental reliance claim, an abuse of rights claim, or a negligent misrepresentation claim. However, his employment discrimination claims under Title VII, 42 U.S.C. § 1981, the Louisiana Employment Discrimination Law, and the Age Discrimination in Employment Act will be allowed to proceed.

<u>Background</u>

Plaintiff Labarron McClendon signed an offer letter accepting employment with the Sewerage & Water Board of New Orleans ("SWB") as a Human Resources Director in October 2019.[2] He relocated from his residence in Alabama to New Orleans to begin work. On July 5, 2022, SWB Executive Director Ghassan Korban wrote a letter to Mr. McClendon terminating his employment for failing to attain a professional certification. But the October 2019 offer letter did not contain a requirement that Mr. McClendon obtain a professional certification. And although

---

[1] The parties have consented to proceed before the magistrate judge. (Rec. Doc. 15).
[2] According to the Complaint, the Civil Service Commissioner of the City of New Orleans delegated all "hiring and promotional authority" for certain SWB job classifications to the SWB.

the job offer posted on the City's job portal included a "Note" that the candidate would be required to obtain a professional certification in human resource management such as SHRM SPHR within the first year of probation, the Indeed.com job posting that Mr. McClendon reviewed contained no such requirement. Further, Mr. McClendon alleges that no certification requirement was discussed during his two interviews for the position. He alleges that a certification was not discussed until July 28, 2020, when Director Korban asked the city to reclassify/upgrade Mr. McClendon's position and the City responded that Mr. McClendon had not obtained the required certification. The SWB allegedly responded that it had no knowledge of any such requirement. Meanwhile, Mr. McClendon attempted to comply with the certification requirement.

According to Mr. McClendon, although he was unable to pass the SHRM test, he did obtain related SHRM professional certifications through other programs. Mr. McClendon also alleges that less than one month prior to his termination, Director Korban stated that he was satisfied with Mr. McClendon's progress in attempting to take the exams.

After that meeting, Amy Trepagnier, Personnel Director of the City, sent a letter to Director Korban reporting that the City wanted to demote or terminate Mr. McClendon due to his lack of professional certification. Mr. McClendon alleges that Director Korban was convinced to terminate him by legal counsel Yolanda Grinstead. He alleges that Ms. Grinstead was motivated to do so because Mr. McClendon had objected to her directive to alter certain records showing that she had received a substantial salary overpayment for almost twelve months prior to discovery of the overpayment and had been required to repay it. He also objected to her directive that he omit records showing this overpayment from a response to a public records request. Mr. McClendon says he opposed the directive because documents pertaining to wage information are not exempt from the Public Records Law even if the overpaid wages were ultimately paid back.

2

Mr. McClendon further alleges that after his termination, he learned that a 39-year-old white employee—Tyler Antrup—also did not hold any professional certification. But Mr. Antrup retained his employment even though his job description contained a "Note" similar to Mr. McClendon's requiring a professional certification.

In this lawsuit against the SWB and the City, Mr. McClendon argues that he—a black male—was discriminated against because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Louisiana Employment Discrimination Law ("LEDL"). He further alleges that he was unlawfully terminated by the SWB in violation of Louisiana's Whistleblower protection law, La. Rev. Stat. § 23:967. He also seeks damages for detrimental reliance from both defendants on the grounds that he relied on the job offer that did not require a professional certification. He asserts a claim for breach of contract against both defendants on the basis that the SWB breached its agreement to continue his employment even though he did not have the certification. He also claims that the City breached an implied duty of good faith by recommending termination. He asserts a claim for negligent misrepresentations as to both defendants on the grounds that the SWB falsely represented that professional certifications were not required. He asserts a claim for abuse of rights. Finally he asserts an age discrimination claim under the Age Discrimination in Employment Act ("ADEA").

The parties consented to proceed before the Magistrate Judge and the District Judge has referred the matter to the undersigned. Presently before the Court are the Motions to Dismiss filed by the SWB and the City.

The City argues that Mr. McClendon cannot state a claim for discrimination under Title VII, §1981, or the LEDL because he was not qualified for the position. It submits that the Civil Service Commission has already determined he did not meet the minimum qualifications and that

he is collaterally estopped from challenging that ruling. The City further argues that Mr. McClendon failed to exhaust his administrative remedies as to his Title VII and ADEA claim because he did not file a charge with the EEOC until more than 300 days after he received notice of his termination. It argues that his breach of contract claim and abuse of rights claim must be dismissed because the contract of employment was "at will." And it argues that Mr. McClendon's negligent misrepresentation claim is time barred because it was filed more than one year after he was hired for the position. Moreover, the City argues that Mr. McClendon has failed to assert any facts or claims implicating the City or any of its representatives. It argues that pursuant to its Home Rule Charter, the CSC has the power to adopt rules for demotion, removal, certification, and qualifications.

The SWB raises the same arguments.[3] It argues further that Mr. McClendon cannot state a Whistleblower claim because he has not alleged an actual violation of law. Further, it argues that Mr. McClendon cannot state a claim for detrimental reliance because his employment was at will. Finally, in addition to arguing that Mr. McClendon's negligent misrepresentation claim is prescribed, the SWB argues that it is barred by Louisiana's Workers' Compensation law and that, in any event, there were no misrepresentations.

Mr. McClendon argues that he has timely exhausted his administrative remedies because he is entitled to equitable tolling. He says he did not learn that a younger white employee replaced him until August 23, 2022. He adds that collateral estoppel does not apply because the issue of his qualification for employment was not litigated in the state administrative proceeding. He argues that he can state a Whistleblower claim because conspiring to violate control of a public record is a violation of law. He argues further that he is not an at-will employee, thus his detrimental

---

[3] It does not address whether the City can have any liability for actions of the SWB or CSC.

reliance, breach of contract, and abuse of rights claims can proceed. He notes that this issue is on appeal to the Louisiana Fourth Circuit Court of Appeals. He argues that his negligent misrepresentation claim is not time barred because he filed suit within one year of his termination. He adds that Workers Compensation law is not applicable because Ms. Grinstead acted intentionally and defendants are liable for her actions. Finally, he insists that the City is a "joint employer" under Title VII because it had the right to recommend demotion or dismissal. He points to his allegations regarding the role of the City's Civil Service Commission in requiring certification and influencing the decision to terminate him. He does not address the City's argument that it cannot be held responsible for the actions of the Civil Service Commission.

<u>Law and Analysis</u>

*1. Standard on Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* <u>Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id</u>. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit has recognized that the court may also consider documents attached to a motion to dismiss by the defendant if they are referred to in the plaintiff's complaint and central to her claim. Id. at 498-99; see Villarreal v. Wells Fargo Bank, N.A., 814 F.3d 763, 766 (5th Cir. 2016).

2. *Exhaustion of Administrative Remedies: Title VII, ADEA*

Title VII requires that a plaintiff must file his charge with the EEOC within 300 days after the alleged unlawful employment practice occurred in cases like this one where the plaintiff first filed his charge with the applicable state employment agency. 42 U.S.C. §2000e-5(e)(1). This same rule applies to claims filed under the Age Discrimination in Employment Act. 29 U.S.C. §626(d)(1); Tyler v. Union Oil Co. of California, 304 F.3d 379, 384 (5th Cir. 2002). The time period for filing "begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." Vadie v. Miss. State Univ., 218 F.3d 365, 371 (5th Cir. 2000).

Although a timely charge with the EEOC is a precondition to filing suit, this limitations period is subject to waiver, estoppel, and equitable tolling. Cruce v. Brazosport Indep. Sch. Dist., 703 F.2d 862, 863–64 (5th Cir. 1983). Importantly, the doctrine of equitable tolling is applied

sparingly and the plaintiff has the burden to justify it. Granger v. Aaron's, Inc., 636 F.3d 708, 712 (5th Cir. 2011). The Fifth Circuit has allowed equitable tolling where there is a pending suit between the same parties in another forum, where the plaintiff was unaware "of the facts giving rise to the claim because of the defendant's intentional concealment of them," or where the EEOC has mislead the plaintiff about the nature of his rights. Id.  (quoting Wilson v. Sec'y, Dep't of Veterans Affs. on Behalf of Veterans Canteen Servs., 65 F.3d 402, 404 (5th Cir. 1995), as amended on denial of reh'g (Nov. 1, 1995)).

Critically, though, "equitable estoppel is not warranted where an employee is aware of all of the facts constituting discriminatory treatment but lacks direct knowledge of the employer's subjective discriminatory purpose." Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1216 (5th Cir. 1992). It is enough that facts supporting a cause of action are apparent:  it is not necessary that the employee be aware of all the evidence that he will rely on at trial. Id.  The rule in both Title VII and ADEA age discrimination cases is that "the limitations period starts running when the plaintiff knows of the discriminatory *act,* not when the plaintiff perceives a discriminatory motive behind the act." Id.  at 1217 n. 2. Fifth Circuit case law indicates that in a disparate treatment case like this one, the distinction lies in whether the plaintiff was aware of the facts necessary to conclude that a similarly situated comparator had been treated differently. Thus, in Pruet Production Co. v. Ayles, the Fifth Circuit held that the limitations period began to run on the date the plaintiff was told he was being terminated and that he would be replaced by a person he knew to be outside the protected age group. 784 F.2d 1275, 1279 (5th Cir. 1986). The court of appeals rejected his argument that his employer had concealed the true reason for his termination and that he did not became aware of a pattern of age discrimination until another younger person was hired at a later date. Id. at 1279-80. But in Rhodes v. Guiberson Oil Tools Division, the Fifth Circuit held that the

company misled the employee by telling him he was being terminated because of a reduction in force and that it would reconsider hiring him, when in fact, there was no reduction in force and he had simply been terminated and replaced with a younger employee at a lower salary. 927 F.2d 876, at 880-81 (5th Cir. 1991). The court determined that the plaintiff "did not have enough facts to be sufficiently aware of a possible claim and thus place an EEOC charge" because he knew only that he was being terminated, that he was 56 years old, and that the company said it was reducing its work force. Id. at 880. The court further found that the company had clearly misled the plaintiff because documents later revealed that there had been no reduction in force as to the plaintiff's position. Id. at 881. The court of appeals held that equitable estoppel applied and that the limitations period was tolled until the employee discovered the falsity of the company's statements upon learning that the company had hired a younger replacement. Id. at 877, 881.[4]

Here, Mr. McClendon was terminated on July 5, 2022. He did not file his EEOC charge until more than 300 days after that on June 9, 2023. He argues, however, that the 300 day time period should not begin to run until August 23, 2022. This is the date he was told there were no records responsive to his request for documents referencing 39-year-old white employee Tyler Antrup's certifications. He submits that it was not until this date that he learned that a younger white individual had been allowed to continue employment without a certification despite a similar

---

[4] The SWB cites Manning v. Chevron Chemical Co., in reply. There the plaintiff argued that equitable tolling should apply because he was unaware that his alleged disability might have affected his employer's decision until it released notes from his interview for the position., 332 F.3d 874, 880 (5th Cir. 2003). He argued that the employer misled him about his potential disability discrimination claim. Id. The Fifth Circuit rejected this argument, explaining that the limitations period will only be tolled "when the employer's *affirmative acts* mislead the employee and induce him not to act within the limitations period." Id. But the employee had admitted that he failed to file a new EEOC charge because he believed his disability discrimination claims were already before the court. Id. The court of appeals concluded that he failed to file an EEOC charge based on his own misunderstanding and not an action by the employer. The Manning case is inapplicable here. Defendants do not contend that Mr. McClendon has admitted some other reason for his delay in filing besides not having learned that a white, younger individual had been allowed to continue employment without required certifications.

note in his job description requiring one. However, it appears that Mr. McClendon was aware of these facts at an earlier date. He alleges that he sent a public records request to the SWB "on August 16, 2022, when he received information regarding a younger White worker who also did not hold professional certifications but was not terminated by the SWB." (Rec. Doc. 1-1, at 7).

At this stage, the Court must accept the facts alleged in the Complaint as true. Mr. McClendon was not sufficiently aware of his possible age and race discrimination claim until he received information that a younger white worker was not terminated although he too did not hold professional certifications. According to the facts alleged, this occurred on August 16, 2022. Prior to receiving such information, Mr. McClendon had been led by the defendants to believe that he was being terminated because he lacked the required certifications. He also suspected he had been terminated because he had tried to prevent unlawful activity with regard to a public records request. According to the Complaint, he did not have information that his race and age may have been the basis for his termination until he received information about Mr. Antrup's situation. Based on the allegations and facts known at this time, that date appears to be August 16, 2022. Three-hundred days after that date is June 12, 2023. Mr. McClendon filed his EEOC charge on June 9, 2023. The allegations of the Complaint are sufficient to plausibly conclude that Mr. McClendon timely exhausted his administrative remedies.

   *3. Qualification for Position: Title VII, § 1981, LEDL*

Mr. McClendon appealed his termination to the New Orleans Civil Service Commission ("CSC"). A hearing was conducted on March 23, 2023, "limited to the threshold issue of whether Mr. McClendon obtained permanent status." (Rec. Doc. 12-3, at 1). The CSC rendered a decision on May 11, 2023, finding that Mr. McClendon never met the minimum qualifications of his

position and was thus never made a permanent employee. <u>Id.</u> at 11.[5] Defendants argue that Mr.

McClendon is collaterally estopped from challenging the CSC's finding that he was not qualified

for his position.

Citing the <u>McDonnell Douglas</u> framework, defendants argue further that Mr. McClendon

cannot state a claim for race or age discrimination because he cannot establish all the elements of

his prima facie case. To establish a prima facie case for employment discrimination, a plaintiff

must show that

> that he (1) is a member of a protected group; (2) was qualified for the position at
> issue; (3) was discharged or suffered some adverse employment action by the
> employer; and (4) was replaced by someone outside his protected group or was
> treated less favorably than other similarly situated employees outside the protected
> group.

<u>Ernst v. Methodist Hosp. Sys.</u>, 1 F.4th 333, 339 (5th Cir. 2021) (quoting <u>Stroy v. Gibson on behalf</u>

<u>of Dep't of Veterans Affs.</u>, 896 F.3d 693, 698 (5th Cir. 2018)). They submit that Mr. McClendon

cannot establish the second element because he has already been found unqualified for the

position.[6]

As a preliminary matter, the CSC decision can have no preclusive effect on Mr.

McClendon's Title VII claim. "Title 28 U.S.C. § 1738 governs the preclusive effect to be given

the judgments and records of state courts, and is not applicable to the unreviewed state

administrative factfinding at issue in this case." <u>Univ. of Tennessee v. Elliott</u>, 478 U.S. 788, 794

(1986). Although courts have extended collateral estoppel to state administrative findings, in

---

[5] According to the Mr. McClendon's memorandum in opposition, he has appealed this decision of the Fourth Circuit and the appeal is in the briefing stage.

[6] The Court notes that at the pleading stage, a plaintiff is not required to establish his prima facie case. <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 511 (2002). Instead, the plaintiff must plead the ultimate elements of his claim. <u>Cicalese v. Univ. of Texas Med. Branch</u>, 924 F.3d 762, 767 (5th Cir. 2019). "There are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" <u>Id.</u> (quoting <u>Raj v. Louisiana State Univ.</u>, 714 F.3d 322, 331 (5th Cir. 2013)).

Elliott, the United States Supreme Court held that "unreviewed state administrative proceedings" do not have "preclusive effect on Title VII claims." Id. at 796. The same rule applies to ADEA claims. Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 110–11 (1991). In both cases, the Supreme Court found that the presumption of administrative estoppel was inconsistent with Congress' intent when enacting the respective employment discrimination statute. Id. Here, Mr. McClendon's Title VII and ADEA claim cannot be precluded by the CSC's findings.

But as a general rule, "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." Id. at 107. In Crockett v. Roberts, for example, a court in this district held that an employee's claims for breach of contract and abuse of right were precluded by the CSC's decision regarding his claim for termination and reinstatement of pay and benefits. No. CIV. A. 05-6085, 2010 WL 1254656, at *3–4 (E.D. La. Mar. 25, 2010). The court found the issues raised in the federal litigation arose out of his suspension and termination, which were litigated before the CSC, and the court found that the plaintiff had been afforded a full and fair opportunity to litigate his claims regarding his suspension and termination before the CSC and the Louisiana state courts (although he had chosen not to file an appeal). Id. at *4.

The situation here, though, is different. First, the CSC's decision indicated that it was limited to the "threshold issue" of whether Mr. McClendon was qualified for his position. It appears he did not have an opportunity to litigate whether his termination was due to his race or age under the LEDL or § 1981.[7] Second, Mr. McClendon reports that the decision itself is on appeal to the Louisiana Fourth Circuit, thus it does not appear to be a final decision at this time.

---

[7] Defendants do not appear to argue that the CSC's decision precludes Mr. McClendon's other claims arising out of his termination (e.g., breach of contract, detrimental reliance, abuse of rights, and Whistleblower retaliation).

Moreover, even if the CSC's finding precludes Mr. McClendon from arguing that he was qualified for his position, that does not preclude his claims of unlawful discrimination. He alleges that a younger, white employee was similarly "unqualified" for his position but allowed to remain employed. He thus alleges that he was treated differently because of his race and age. Whether the evidence obtained in discovery supports his theory remains to be tested. But at this stage, even if Mr. McClendon was not "qualified" for his position for purposes of acquiring permanent status as a civil service employee, his claims for employment discrimination would be allowed to proceed.

4. *Whistleblower retaliation claim.*[8]

Louisiana's Whistleblower statute provides that:

An employer shall not take reprisal against an employee who in good faith, and *after advising the employer of the violation of law*:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. Rev. Stat. § 23:967(A); see Kell v. Iberville Bank, 352 F. Supp. 3d 650, 661–62 (E.D. La. 2018). Plaintiff must establish that the defendant "committed an *actual* violation of [Louisiana] law." Herster v. Bd. of Supervisors of Louisiana State Univ., 887 F.3d 177, 187 (5th Cir. 2018) (quoting Wilson v. Tregre, 787 F.3d 322, 326 (5th Cir. 2015)) (emphasis and alteration in original); see Accardo v. Louisiana Health Servs. & Indem. Co., 2005-2377 (La. App. 1 Cir. 6/21/06), 943 So. 2d 381, 387 ("[W]e are compelled to conclude that the Louisiana Whistleblower Statute, La. R.S. 23:967, requires an employee to prove an actual violation of state law in order to prevail on the merits of the case."). Reporting a potential violation and refusing to comply with an allegedly

---

[8] Mr. McClendon asserts this claim only as to the SWB.

illegal request has been held insufficient. <u>Cubas v. St. James Par. Sch. Bd.</u>, No. CV 20-1322-WBV-KWR, 2021 WL 6196977, at *26 (E.D. La. Dec. 30, 2021) (holding that where a supervisor allegedly instructed plaintiff to take certain illegal actions and plaintiff refused to comply, "those potential future violations do not satisfy the requirement of an actual violation of law, as required by the Louisiana Whistleblower statute"); <u>Painter v. State</u>, 2012-0224 (La. App. 1 Cir. 6/13/13), 2013 WL 1211476 (unpublished) (holding that plaintiff's Whistleblower claim had to be dismissed where plaintiff alleged that he understood he was being ordered to issue a liquor license but he refused to do so because it would have violated applicable regulations).

Here, Mr. McClendon alleges that Ms. Grinstead requested that the salary overpayment be omitted from a response to a public records request and that her payroll record be altered on the spreadsheet generated for the request and on the internal payroll system. But Mr. McClendon opposed the request. He does not allege that Ms. Grinstead's request was actually carried out.

Nonetheless, Mr. McClendon argues that Ms. Grinstead's actions amount to a violation of Louisiana's public records law. He cites Louisiana Revised Statute §44:36 and § 44:37, which provide as follows:

> All persons and public bodies having custody or control of any public record, other than conveyance, probate, mortgage, or other permanent records required by existing law to be kept for all time, *shall exercise diligence and care in preserving the public record* for the period or periods of time specified by law for public records.

La. Stat. Ann. § 44:36(A)(emphasis added).

> Any person having custody or control of a public record who arbitrarily or capriciously violates any of the provisions of this Chapter, or any person not having such custody or control *who by any conspiracy*, understanding, or cooperation with any other person *arbitrarily or capriciously hinders or attempts to hinder the inspection of any public records* declared by this Chapter to be subject to inspection, shall upon first conviction be fined not less than one hundred dollars, and not more than one thousand dollars, or shall be imprisoned for not less than one month, nor more than six months.

La. Stat. Ann. § 44:37(emphasis added). However, Mr. McClendon offers no authority for finding that an individual's mere request that a document be altered amounts to an actual violation of law.

Mr. McClendon appears to concede as much, arguing that the SWB's interpretation of the Whistleblower law would render the law obsolete because it would require the employee participate in the violation first. Of course participation in the violation is not a requirement—an employee may report a violation of law by others in the workplace. And further, the court's mere concern with the scope of the statute cannot alter its application. In Accardo, for example, a Louisiana court of appeals considered the legislative history, including the deletion of "potential" violation of law and the elimination of a version that only required an employee to threaten to disclose an action the employee reasonably believed to be a violation of law, and concluded that:

> Although we have grave concerns regarding the chilling effect that this requirement will have on the reporting by an employee of illegal acts, we are compelled to conclude that the Louisiana Whistleblower Statute, La. R.S. 23:967, requires an employee to prove an actual violation of state law in order to prevail on the merits of the case.

943 So. 2d at 387. Similarly, while it might be desirable to protect an employee from retaliation for objecting to and thereby stopping illegal actions by the employer, that is not within the purview of Louisiana's Whistleblower law as interpreted by the courts. Mr. McClendon has pointed to no case to the contrary. Accordingly, the Court finds that Mr. McClendon's Whistleblower claim against the SWB must be dismissed for failure to state a claim because he has not alleged an actual violation of law.

   5. *At-Will Employment: Breach of Contract, Detrimental Reliance, Abuse of Rights*

Defendants argue that Mr. McClendon's claims for breach of contract, detrimental reliance, and abuse of rights must be dismissed because Mr. McClendon was an at-will employee. Mr. McClendon denies that he is an at-will employee. For example, he argues that under City of New

Orleans, Civil Service Rule VII, Section 1.1, he could only be terminated with the approval of the Civil Service Director during his first two months, and thereafter (through the end of the one year "working test period") could only be terminated if:

> in the opinion of the appointing authority, the working test indicates that (1) the employee is unable or unwilling to perform his duties satisfactorily or (2) his habits and dependability do not merit his continuance in the service; provided not more than three (3) employees shall be removed successively from the same position.[9]

He argues that this type of arrangement is inconsistent with at-will employment. As to the SWB's argument that Mr. McClendon was employed at-will because he was not made permanent after his first year and was on probation, Mr. McClendon argues that this issue is on appeal with the Louisiana Fourth Circuit Court of Appeals and that the CSC decision regarding his permanent employee status is not a binding final judgment. Further, he argues that he was classified as "provisional" and not "probationary" at the time of his termination. He adds that the City of New Orleans Civil Service Rules prohibit employees from staying on probationary status for more than one year.[10]

"Under Louisiana law, when a person is employed for an indefinite period, he is an employee at will." Leger v. Tyson Foods, Inc., 95-1055 (La. App. 3 Cir. 1/31/96), 670 So. 2d 397, 401, writ denied, 96-0545 (La. 4/19/96), 671 So. 2d 920. Thus, unless a person is employed for a fixed period of time, the "employee is terminable at will, at any time, for any cause, or for no cause." Cross v. Shell Oil Co., 711 F. Supp. 302, 304 (M.D. La. 1988). Similarly, the employee is free to quit at any time. Bell v. Touro Infirmary, Inc., 2000-0824 (La. App. 4 Cir. 3/21/01), 785 So. 2d 926, 928. Except for statutory or constitutional provisions (e.g., prohibiting discrimination

---

[9] The Rules of the Civil Service Commission, City of New Orleans, as amended on August 27, 2023, are available for download at https://nola.gov/civil-service/commission/rules/. The document indicates that Rule VII Section 1.1 was in effect in the same form during the period of Mr. McClendon's employment.
[10] See the Rules of the Civil Service Commission, n. 10, supra.

based on race), "the reasons for termination need not be accurate, fair or reasonable." Id.

Mr. McClendon does not claim that he was employed pursuant to a contract for a definite term. Instead, he argues that pursuant to the Civil Service Rules, he could only be terminated if certain conditions were met. But to the extent Mr. McClendon's employment is covered by the Civil Service Rules, this does not give rise to a contract enforceable in this Court. That is because "the Civil Service Commission has exclusive jurisdiction over classified civil service employer-employee disputes that are employment related." Akins v. Hous. Auth. of New Orleans, 2003-1086 (La. App. 4 Cir. 9/10/03), 856 So. 2d 1220, 1221, writ denied, 2003-2781 (La. 12/19/03), 861 So. 2d 574. In other words, to the extent Mr. McClendon contends that he was terminated in violation of the Civil Service Rules, that is a matter to be taken up with the CSC. If, to the contrary, the Civil Service Rules do not apply, then there is no basis for concluding that Mr. McClendon was not an at-will employee because the protections of the Civil Service Rules are not implicated.[11]

Nonetheless, Mr. McClendon argues that even if he is an at-will employee, his claims can proceed. The Court addresses each of these arguments in turn.

### a. Breach of Contract

Mr. McClendon argues that because every contract includes a duty of good faith, even an at-will contract must be performed in good faith. He submits that this means a party exercising its right to terminate a contract must consider the hardship to the other party. He argues that if termination occurs because of purely personal rather than business reasons, bad faith may exist. Defendants argue that there can be no breach of the duty of good faith if there is no breach of contract. They argue that because Mr. McClendon cannot state a claim for breach of an at-will

---

[11] For example, courts have held that "a probationary-status civil service employee may be terminated at any time and for virtually any reason." Johnson v. Sewerage & Water Bd. New Orleans, 2015-0950 (La. App. 4 Cir. 3/30/16), 190 So. 3d 785, 796.

contract, he cannot state a claim for breach of the duty of good faith.

"[J]udicial determination of good-faith (or bad-faith) failure to perform a conventional obligation is always preceded by a finding that there was a failure to perform, or a breach of the contract." Favrot v. Favrot, 2010-0986 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1110, writ denied, 2011-0636 (La. 5/6/11), 62 So. 3d 127; see Port Cargo Servs., LLC v. Westchester Surplus Lines Ins. Co., No. CV 22-1018, 2023 WL 3211868, at *7 (E.D. La. May 2, 2023) ("Since '[b]reach of contract is a condition precedent to recovery for the breach of the duty of good faith,' and there was no breach of contract, plaintiffs too are unable to establish breach of duty of good faith and fair dealing." (quoting Bayle v. Allstate Ins. Co., 615 F.3d 350, 363 (5th Cir. 2010))). As the court in Favrot explained "good-faith performance of the obligation is not triggered by the morality of a party's intentions, but is initiated only when the obligee has proven a *failure to perform* an obligation." Id.  For example, in Ledet v. Campo, a dental hygienist was an at-will employee of two dentists who both terminated her employment. 2012-1193 (La. App. 3 Cir. 3/6/13), 128 So. 3d 1034, 1034. The employee claimed that one of the dentists had breached his duty of good faith by misrepresenting facts to the other dentist, thereby convincing the other dentist to terminate her employment. Id.  at 1039. The court of appeals held that the trial court had properly granted summary judgment to the dentist because the dentist owed her no duty with regard to her at-will employment with the other dentist. Id.  at 1040.

Here, the Court has already found that on the facts alleged, Mr. McClendon was an at-will employee. The termination of that at-will employment relationship does not amount to a breach of contract. And therefore, the duty of good faith was never implicated. Mr. McClendon's breach of contract claim must be dismissed.

*b. Detrimental Reliance*

The principle of detrimental reliance provides that absent a formal contract, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. Civ. Code Ann. art. 1967. The "doctrine is 'designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.'" Babkow v. Morris Bart, P.L.C., 98-0256 (La. App. 4 Cir. 12/16/98), 726 So. 2d 423, 427 (quoting Orr v. Bancroft Bag, Inc., 29,046 (La. App. 2 Cir. 1/22/97), 687 So. 2d 1068, 1070). "To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." Suire v. Lafayette City-Par. Consol. Gov't, 2004-1459 (La. 4/12/05), 907 So. 2d 37, 59.

An employer can generally terminate an at-will employee "at any time for any reason without incurring liability for the discharge." Quebedeaux v. Dow Chem. Co., 2001-2297 (La. 6/21/02), 820 So. 2d 542, 545 (quoting Williams v. Delta Haven, Inc., 416 So. 2d 637, 638 (La. Ct. App. 1982)). Thus, it has been found "patently unreasonable as a matter of law to have relied on the at-will employment." May v. Harris Mgmt. Corp., 2004-2657 (La. App. 1 Cir. 12/22/05), 928 So. 2d 140, 146. Further, courts have observed that "[i]n an at-will employment relationship, the employer may unilaterally impose prospective changes in the terms and conditions of employment." Woods v. Preis PLC, 2021-221 (La. App. 3 Cir. 11/3/21), 330 So. 3d 1128, 1134, writ denied, 2021-01808 (La. 1/26/22), 332 So. 3d 83 (quoting Rick J. Norman, Louisiana Practice Series: Louisiana Employment Law § 3:24 (2020)).

18

The SWB argues that because Mr. McClendon was an at-will employee, it was unreasonable for him to rely on any representation that certification was not required. Mr. McClendon insists that because he has alleged the SWB acted in bad faith, he can state a claim for detrimental reliance. He cites Bains v. Young Men's Christian Association of Greater New Orleans, where the court of appeals held that a plaintiff who relied on an offer of at-will employment could state a claim for detrimental reliance. 2006-1423 (La. App. 4 Cir. 10/3/07), 969 So. 2d 646, 652, writ denied, 2007-2146 (La. 1/7/08), 973 So. 2d 727. The plaintiff in Bains had quit her job in reliance of an offer of employment, but the new employer then withdrew the job offer before she began employment. Id.  The court explicitly declined to consider whether the plaintiff's claim would have failed if she had been hired for one minute and then fired under the principle that an employer can terminate at-will employment at any time. Thus, the Court finds the Bains decision is unavailing here, where Mr. McClendon was employed for over two years before his employer cited his lack of certification and terminated him.

The Court finds that because Mr. McClendon was an at-will employee, any reliance on representations regarding the need for a certification to maintain employment was unreasonable. His detrimental reliance claim fails as a matter of law and must be dismissed.

   *c.   Abuse of Rights*

Under the abuse of rights doctrine the holder of an individual right may not exercise that right to the detriment of another simply for the sake of exercising it. Lilawanti Enterprises, Inc. v. Walden Book Co., 95-2048 (La. App. 4 Cir. 2/29/96), 670 So. 2d 558, 561. The doctrine is "applied only in limited circumstances." Truschinger v. Pak, 513 So. 2d 1151, 1154 (La. 1987). Courts will only apply the doctrine if one of the following conditions is met:

  (1) if the predominant motive for it was to cause harm;
  (2) if there was no serious or legitimate motive . . . ;

(3) if the exercise of the right . . . is against moral rules, good faith, or elementary fairness;
(4) if the right . . . is exercised for a purpose other than that for which it is granted.

Id.  For example, in Truschinger, the Louisiana Supreme Court held that the lessor was not liable for abuse of rights where he refused to consent to a sublease proposed by the lessee. 513 So. 2d at 1154–55. The court found that even if the lessor demanded half of the price the sublessee had agreed to pay to the sublessor to purchase the business name and acquire the lease, the lessor's refusal did not amount to an abuse of rights because the lessor's motive was economic, not a wish to harm the sublessor. Id.  The court found the lessor's motive was serious and legitimate. Id.  at 1115. The court found no business practice that was against moral rules, good faith, or elementary fairness. Id.  And the court found that the refusal "was exercised for the purpose for which it was granted—for the owner to maintain control over who leases his property." Id.

In the employment context, courts have held that "[t]he abuse of rights doctrine cannot vitiate the employer's right to terminate an at-will employee." Sonnier v. Diversified Healthcare-Lake Charles, LLC, 2022-420 (La. App. 3 Cir. 4/26/23), 364 So. 3d 1213, 36–1238.Where the employer has a legitimate and serious interest in exercising its right to terminate the employee, there is no abuse of rights. Thus in Walther v. National Tea Co. the United States Fifth Circuit Court of Appeals held that two employees could not state a claim for abuse of rights against their employer, which had discharged them to prevent the accrual of pension benefits. 848 F.2d 518, 520 (5th Cir. 1988). The court found that the company had a legitimate interest in avoiding the liability inherent in the vesting of their pensions. Id.  The Sonnier court similarly rejected an at-will employee's abuse of rights claim. 364 So. 3d at 1237-38.

As discussed above, to the extent Mr. McClendon's claims are not subject to the exclusive jurisdiction of the CSC, his employment was "at will." Defendants had a right to terminate him

"for any reason even if it [was] inaccurate, unfair, or unreasonable." Id. at 1235. Mr. McClendon argues that defendants enforced their right to terminate him while misrepresenting that he could maintain his employment while continuing to test for certification. This does not rise to the level of an abuse of rights, even if it was unfair.[12] Mr. McClendon's claim for abuse of rights must be dismissed.

### 6. Negligent Misrepresentation

#### a. Prescription

A cause of action for negligent misrepresentation arises when the defendant has a legal duty to supply correct information, when the defendant breaches that duty, and when the breach causes plaintiff damage. Ponthier v. Manalla, 06-632 (La. App. 5 Cir. 1/30/07), 951 So. 2d 1242, 1253. Claims for negligent misrepresentation are delictual in nature and subject to a one-year prescriptive period. Ames v. Ohle, 2011-1540 (La. App. 4 Cir. 5/23/12), 97 So. 3d 386, 392, decision clarified on reh'g (July 11, 2012), writ denied, 2012-1832 (La. 11/9/12), 100 So. 3d 837. "Prescription begins to run against a claimant when he obtains actual or constructive knowledge of facts indicating a cause of action." Id. at 394.

Defendants argue that Mr. McClendon's claim for negligent misrepresentation arising out of the purported misstatements during the hiring and recruitment process is time barred because he was hired for his position on November 18, 2019. Mr. McClendon counters that his cause of action did not accrue until his employment was terminated on July 22, 2022, when he suffered a pecuniary loss. The SWB responds that Mr. McClendon has also alleged that he suffered damages in relocating from Alabama to New Orleans to take the job offer based on the alleged misrepresentation.

---

[12] Of course, the defendants could not terminate Mr. McClendon in violation of Title VII, the ADEA, or the Whistleblower statute. Those claims are considered separately.

The Court finds that Mr. McClendon's negligent misrepresentation claim accrued at the time he learned that the HR certification would be required for continued employment, despite purported earlier representations during the hiring process and throughout his employment that such certifications were not required or that his continued attempts to obtain the certification would be sufficient to maintain employment. It was not until this point that he became aware that defendants had breached their alleged duty to supply correct information. This had not occurred at the time he was hired on November 18, 2019, and thus, although he may have incurred some of the costs he now claims as damages by that time, the prescriptive period did not start to run on the date of hire—even as to representations before that time and certainly not as to representations thereafter. Defendants do not advance any other accrual date for the court to consider. Prescription does not bar Mr. McClendon's negligent misrepresentation claim at this stage of the proceedings.

### b. Workers' Compensation Statute Bar

Louisiana's Workers' Compensation law "provides the exclusive remedy for any claim of negligence against an employer." Lefkowitz v. Administrators of Tulane Educ. Fund, No. CV 21-1578, 2022 WL 376148, at *8 (E.D. La. Feb. 8, 2022); see La. Stat. Ann. § 23:1032(A); Bertaut v. Folger Coffee Co., No. CIVA 06-2437 GTP, 2006 WL 2513175, at *3 (E.D. La. Aug. 29, 2006) ("Because the plaintiff specifically claims her actions arise in the 'course of employment,' worker's compensation applies and is the exclusive remedy for any claims of negligent infliction of emotional distress, failure to train, and failure to supervise.").

The SWB argues that Mr. McClendon's negligent misrepresentation claim is barred by the Workers' Compensation law. In response, Mr. McClendon seems to argue that this rule does not apply because Ms. Grinstead intentionally retaliated against Mr. McClendon in recommending his demotion or dismissal.

Although Mr. McClendon is correct that intentional torts do not fall within the Workers' Compensation regime, his argument is unavailing. His Complaint contains no allegations that could support finding that the alleged misrepresentations regarding whether a certification would be required to maintain employment were made intentionally.[13] Ms. Grinstead's alleged intent in recommending demotion does not bear on Mr. McClendon's misrepresentation claim. She is not alleged to have made any misrepresentations to Mr. McClendon. The Court finds that Mr. McClendon's claim for negligent misrepresentation arising out of any misrepresentations during his employment are barred by the Workers' Compensation law.

c. *Plausibility*

"Negligent misrepresentation occurs when there is: 1.) a legal duty to provide correct information, 2.) breach, and 3.) damages that result from a justifiable reliance on the misrepresentation." Cameron Par. Sch. Bd. v. State Farm Fire & Cas. Co., 560 F. Supp. 2d 485, 489 (W.D. La. 2008).

With regard to any negligent misrepresentations during the hiring process,[14] the Court finds that Mr. McClendon cannot state a claim as a matter of law because he cannot show any misrepresentations and even if he could, any reliance on such misrepresentations is not reasonable. First, Mr. McClendon's memorandum in opposition does not respond to the SWB's argument on this point. Further, Mr. McClendon merely alleges that during the hiring process, he was told that professional certifications were not required "to accept the job." But his allegations do not show that this was false. By his own statements, he was, at most, given incomplete information, not false information. He was offered the job despite lacking a certification. He alleges that there was no

---

[13] Nor does the complaint purport to assert a claim for intentional misrepresentation.
[14] As determined in Section 6.b, claims arising out of alleged misrepresentations during Mr. McClendon's employment are barred by the Workers' Compensation statute.

discussion of a certification until eight months after he began employment, when SWB Director Korban sought to reclassify and/or upgrade Mr. McClendon's position and the City responded that Mr. McClendon had not attained his professional certification. He alleges that, thereafter, he was encouraged to continue his attempts to obtain the certification while he maintained employment. Moreover, the Court finds that if even if the SWB represented that Mr. McClendon would never be required to obtain certain certifications to maintain employment (which is not alleged), it would have been unreasonable for Mr. McClendon to rely on this representation in accepting employment and moving to New Orleans. See Woods, 330 So. 3d at 1134 (explaining that an at-will employer can unilaterally impose prospective changes on the terms and conditions of employment). As discussed above, Mr. McClendon's employment was at-will. Just as his detrimental reliance claim fails, so too must his negligent misrepresentation claim.

7. *Claims Against the City*

The City argues that Mr. McClendon fails to state any claim directly against the City. At most, it argues, Mr. McClendon alleges that the New Orleans CSC delegated "hiring and promotional authority" for the SWB's job classifications. But, it points out, Mr. McClendon does not allege that the CSC delegated any authority to the City. It adds that Mr. McClendon does not allege any action by any representative of the City. It argues that it does not have rule-making or disciplinary authority over civil service employees. It submits that the City's Home Rule Charter vests the CSC with authority over rules for demotion, removal, certification, qualifications, and other personnel matters. It insists that Mr. McClendon's bare allegation that he was jointly employed by the City and the SWB is insufficient.

Mr. McClendon responds that in determining whether an entity is an employee's joint employer, the court must engage in a fact specific inquiry. He argues that the right to control an

employee's conduct is the most important part of the test. He points out that he alleges that Ms. Trepagnier, the Personnel Director employed by the City's Civil Service Department influenced the termination of Mr. McClendon.

A defendant is an "employer" under Title VII if it meets the statutory definition of "employer" and if it satisfies the hybrid economic realities/common law control test. Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't, 479 F.3d 377, 380 (5th Cir. 2007). The City here does not dispute that it meets the statutory definition of employer and the Court assumes that it does. In applying the "economic realities/common law control" test, the court considers whether the alleged employer has the right to hire, fire, supervise, and set the employee's work schedule along with whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment. Id.

The true relationship between the CSC, the City, and the SWB is not entirely clear. But Mr. McClendon clearly alleges that the City sent the SWB a letter informing the SWB that Mr. McClendon had not attained the required professional certification and that the City wanted to demote or terminate him for lacking the certification. He alleges that Ms. Trepagnier was Personnel Director of the City. To the extent the Home Rule Charter delegates authority for personnel matters to the CSC, the Court has insufficient information to determine whether the CSC is a separate legal entity from the City as opposed to a department of the City. The Court finds that at this stage, Mr. McClendon's allegations are sufficient to plausibly state a claim that the City was his joint employer along with the SWB.

Conclusion

For the foregoing reasons, the Motions to Dismiss (Rec. Docs. 11, 12) are GRANTED in

part and DENIED in part. Mr. McClendon's claim under Louisiana Revised Statute § 23:967 is dismissed because he has failed to allege an actual violation of law. Mr. McClendon's claims for breach of contract, detrimental reliance, and abuse of rights are dismissed because he is an at-will employee. Mr. McClendon's negligent misrepresentation claims as to representations during his employment are dismissed as barred by the Workers' Compensation law. His negligent misrepresentation claims for pre-employment representations are dismissed for failure to state a plausible claim. However, Mr. McClendon's employment discrimination claims under Title VII, 42 U.S.C. § 1981, the Louisiana Employment Discrimination Law, and the Age Discrimination in Employment Act shall be allowed to proceed.

New Orleans, Louisiana, this 30th day of November, 2023.

Janis van Meerveld
United States Magistrate Judge